**Department of Workforce Development**
**Equal Rights Division**
819 N. 6th St, Rm. 723
Milwaukee, WI 53203

Telephone: (414) 227-4384
Fax: (414) 227-4084



**STATE OF WISCONSIN**

**Department of Workforce Development**

**Tony Evers,** Governor
**Caleb Frostman,** Secretary

DATED AND MAILED   NOV 26 2019

Daniel Correa-Osorio
2608 S 7th St
Milwaukee, WI 53215
  Complainant

vs.

INITIAL DETERMINATION -
NO PROBABLE CAUSE

ERD Case No. CR201900953
EEOC Case No. 26G201900756C

Elite Finishing LLC
3270 S 3rd St
Milwaukee, WI 53207
  Respondent

---

I. THE DIVISION DECIDED:

There is no probable cause to believe Elite Finishing LLC violated the Wisconsin Fair Employment Law, sec. 111.31--111.395, Stats., by:

A. discriminating against the Complainant in terms or conditions of employment because of ancestry;

B. terminating the employment of the Complainant because of ancestry.

The complaint is therefore dismissed.

II. THIS MEANS:

The Equal Rights Division found no reason to hold a formal hearing on the complaint and is dismissing the complaint.

III. THE NEXT STEP IS:

**The dismissal will become final unless the Complainant submits a written appeal letter to the Equal Rights Division, 819 North 6th Street, Milwaukee, Wisconsin 53203. The appeal letter must be received within 30 days of the date this determination was mailed.** (The DATE OF MAILING is stamped at the top of the Initial Determination.) In the appeal letter, the Complainant must state the specific reasons for appealing.

If the Complainant files a timely appeal, this case will be certified for a formal administrative hearing. After the hearing, an Administrative Law Judge will decide i



is probable cause to believe that a violation occurred. A notice of hearing stating the date, time and place of hearing will be sent to the parties. This notice will also include an information sheet, as well as a copy of the statutes and administrative code. At the hearing, the parties will be given the opportunity to present evidence to support their cases. Neither the Initial Determination, nor the evidence presented to the Equal Rights Division during the investigation of this case, will automatically become part of the record at hearing. <u>The Administrative Law Judge will only consider evidence presented at the hearing.</u> The parties may wish to consult with an attorney for legal advice. The Division will close this case without further action if no timely appeal is received.

IV. DATE OF FILING AND/OR INITIAL WRITTEN CONTACT:

   A. The Complainant first contacted the Division in writing on April 8, 2019 alleging employment discrimination. The Division accepted the Complainant's complaint on April 11, 2019.

V. THE DIVISION DECIDED THERE WAS NO PROBABLE CAUSE BASED ON THE FOLLOWING INFORMATION:

   A. The Respondent performs metal finishing services for parts manufacturers.

   B. The Complainant, a Puerto Rican male, began working for the Respondent on March 3, 2014. His most recent position was Waste Water Treatment Operator.

   C. In the Complainant's complaint, he alleged that he was singled out and treated differently, and ultimately terminated, due to his ancestry, Puerto Rican. The Complainant believed that Mexican employees were treated better than he was.

   The Complainant claimed that his supervisor, Jose Lopez (Mexican), gave preference to his coworker, Victor Orosco (Mexican). The Complainant believed that Mr. Orosco was given a more flexible schedule and the opportunity to work more overtime hours.

   On March 22, 2019, the Respondent asked to meet with the Complainant. He was informed that he was being suspended for not punching out from the work clock when he took his breaks. The Complainant argued that the Respondent believed his coworker's word over his. The Complainant alleged that during that meeting, Mr. Lopez stated that he preferred to suspend the Complainant over Mr. Orosco. The Complainant believed Mr. Lopez preferred Mr. Orosco because of his national origin. The Complainant argued that during his five-year employment with the Respondent, he, as well as the other employees, never had to clock out when he went on break. At the end of the meeting, the Complainant's employment was terminated. The Complainant argued that the Respondent did not follow progressive discipline. He was not issued any warning prior to this termination. The Complainant argued that he was trying to defend himself.

   D. The Respondent noted that in early March 2019, Mr. Orosco made a complaint that the Complainant was leaving work early and not finishing the duties that he was required to perform at the end of his shift. Instead, the Complainant left those duties for Mr. Orosco to perform. Another employee, Ezequiel Palafox, complained that the Complainant was leaving work early almost every day and/or leaving in the

middle of his shift. The Plant Manager, Jose Lopez, was made aware of these and other similar complaints.

Mr. Lopez reported the issues to the Human Resources Manager, Atiya Hasan (Pakistani). Ms. Hasan reviewed the Complainant's time cards and discovered that he had a practice of leaving work before the end of his shift. Additionally, the Complainant occasionally left work in the middle of shift, and did not punch out, as he was required to do. On March 22, 2019, Ms. Hasan met with the Complainant to address these concerns.

Ms. Hasan explained to the Complainant that he was not to leave work prior to the end of his shift without authorization, he was to not leave work for personal reasons without punching out, he had to stop leaving the tanks and press filters overfilled and dirty for the next shift, and he needed to use required personal protective equipment. The Respondent argued that the Complainant did not take the constructive criticism well. The Respondent claimed that the Complainant became defensive and denied doing anything wrong. The Complainant felt he did the job well and believed that he should have received a raise. The Complainant argued that other employees, Mr. Gonzalez and Mr. Orosco, sometimes left work to drop off or pick up their kids. Ms. Hasan agreed that Mr. Gonzalez and Mr. Orosco sometimes left work, but they always obtained permission from their supervisors and they punched out when he left. The Complainant was angry and upset.

The Respondent argued that it did not intend on terminating the Complainant's employment during that meeting. He refused to sign his warning. The Respondent noted that the Complainant was responsible for ensuring that dangerous chemicals and hazardous waste were not discharged into water supply. Ms. Hasan consulted with the Respondent's President, Jaime Maliszewski (Polish), and determined that there was too much of a risk to continue to employ the Complainant. The Respondent feared that the Complainant was a potential liability to the water supply as a disgruntled employee.

The Respondent denied that the Complainant was discriminated against due to his ancestry. The Respondent argued that Ms. Hasan and Mr. Maliszewski made the decision to terminate the Complainant's employment, not Mr. Lopez. The Respondent denied that Mr. Gonzalez and Mr. Orosco engaged in the same behavior as the Complainant. The Complainant left work for personal reasons, without supervisor approval, and did not punch out when he would leave. The Respondent noted that it has disciplined other employees, two Mexican and one white, for similar conduct.

E.  The Complainant maintained he was treated differently because he is Puerto Rican and his coworkers are Mexican.

The Complainant argued that the Respondent retaliated against him for reporting unsafe work conditions.

The Complainant argued that during his employment, he did not have any issues with attendance or performance. The Complainant passed his probationary period without any issues with his attendance or performance. He noted that he is a responsible employee.

The Complainant maintained that during his five-year employment with the Respondent, he never received any warning or discipline. The Complainant noted that he was a trained Waste Water Treatment Operator.

The Complainant provided an audio recording. In the recording, it can be heard that one voice says that he trusts Victor [Orosco] over anyone, because he has known him for 15 years. The voice says that he believes Victor [Orosco]. The voice says that he prefers that "he" (presumably the Complainant) quit over Mr. Orosco.

VI. INVESTIGATOR'S EXPLANATION:

A. The Respondent received complaints from its employees that the Complainant was not staying for his full shift, and not completing his work responsibilities for the day, leaving it for the next shift. The Respondent investigated the complaints and determined that the Complainant left work early and left work in the middle of his shift without punching out. The Respondent met with the Complainant on March 22, 2019 to discipline him for these workplace violations.

B. The Complainant's employment was terminated because of his response to the discipline. The Complainant refused to sign his discipline, and instead became defensive, angry, and upset. Ms. Hasan and Mr. Maliszewski made the decision to terminate the Complainant's employment because of the potential risk of the Complainant becoming a disgruntled employee with access to waste in the water supply.

C. The Complainant failed to provide sufficient information to substantiate that he was discriminated against due to his ancestry.

Leticia Daley
Equal Rights Officer

cc: Complainant
Respondent
Attorney for Complainant, Victor M. Arellano
Attorney for Respondent, Alan E. Seneczko